UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL THOMAS                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:11-CV-P102-H

PAULINE KUHBANDER et al.                                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Defendants Pauline Kuhbander and Rhonda Harrison (DN 37). For the following reasons, the Court will grant Defendants' motion.

## I. FACTS

Plaintiff is an inmate at the Kentucky State Reformatory (KSR). On initial review of his complaint, the Court allowed Plaintiff's individual-capacity Eighth Amendment claims against Defendants Kuhbander and Harrison to go forward. His claims against these Defendants were as follows:

> I have put in at least 10 medical slips to see the doctors and been denied help. I had pins put in my ankle[.] When the doctor put them in he said they would have to come out. Now I seen Dr. Harris and Dr. Kubinder and they refuse to help me. They say just take Tylenol. I have wrote and pleded with KSR for help and have been ignored and each day my foot gets worse. I must live in pain and my foot will not heal right because of this.

Plaintiff sought monetary and punitive damages and $10,000 to "fix his foot."

## II. ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

Defendants argue in their summary-judgment motion that Plaintiff failed to exhaust his available administrative remedies prior to filing suit; that no evidence exists of deliberate indifference to Plaintiff's medical needs; and that they cannot be held vicariously liable for the acts of others.

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, a prisoner is required to exhaust administrative remedies before bringing an action under federal law relating to prison conditions. However, "§ 1997(e)(c)(2) allows a court to dismiss a claim on the merits despite a prisoner's failure to exhaust his administrative remedies" at the summary-judgment stage. *Crosky v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-cv-400, 2012 WL 748408, at *5 (S.D. Ohio Mar. 8, 2012). Because the Court finds that Defendants are entitled to summary judgment on the merits of the claim against them, the Court does not consider their argument that Plaintiff failed to exhaust his administrative remedies.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The standard applied in reviewing the actions of prison doctors and medical staff in this

type of case is deferential. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also White v. Napoleon*, 897 F.2d 103, 1010 (3d Cir. 1990); *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).

With regard to the merits of Plaintiff's Eighth Amendment claim, Defendants argue that the evidence shows that they had no role in the alleged failure to insure the removal of the pins in his ankle. Attached to the summary-judgment motion is Defendant Kuhbander's affidavit in which she avers that she is an Advanced Registered Nurse Practitioner (ARNP). She states that the open reduction-internal fixation (ORIF) surgery which Plaintiff underwent on June 18, 2010, involves the implementation of implants (pins, screws, plates, and/or bone nails) to guide the healing of bone as well as the setting of the bone itself and is used in cases with serious fractures.[1] She avers that Plaintiff's ORIF surgery took place at the Hardin Memorial Hospital by Dr. Maric Craig, a physician with the Elizabethtown Orthopedic Associates (EOA); that all follow-up orthopedic care was managed by EAO; and, in fact, that all of the post-operative treatment specific to Plaintiff's orthopedic issues "was directed and carried out by his orthopedic physicians and occurred outside of KSR." She further avers:

> ARNP Harrison and I, as well as other medical providers at KSR followed Thomas' orthopedic situation in a support capacity. The medical care and treatment Thomas received at KSR was limited

---

[1] The record shows that this ankle surgery was necessitated when Plaintiff fractured his ankle while playing basketball in May 2010 while Plaintiff was housed at the Hardin County Detention Center.

to sick calls, medicine administration, physical therapy and
necessary follow-up according to the orders from his orthopedic
physicians, as well as other diagnoses and treatment for conditions
unrelated to his ankle fracture.

She also avers that she is knowledgeable about "the permitted scope and practice of ARNP's such as myself and Rhonda Harrison;" that the "post-ORIF removal of pins, screws or other devices is not a procedure that either [] Harrison or I are qualified to prescribe;" that neither she nor Harrison "made any determination with respect to the propriety of the continued utilization of the appropriate management of the fixation devices;" that the course of Plaintiff's orthopedic care was "determined by his orthopedic physician;" and that the medical records show that by April 21, 2011, Plaintiff's orthopedic physician had released him from further follow-up care. She also avers that KSR is not equipped to perform the surgical removal of pins; that neither she nor Defendant Harrison are permitted to perform or authorize such a procedure; and that she was not deliberately indifferent to Plaintiff's serious medical needs. Defendant Harrison, also an ARNP, submitted an almost identical affidavit.

Medical records from EOA attached to Defendants' motion show that Dr. Craig performed the ORIF on Plaintiff on June 18, 2010. None of the records from EOA state that pins needed to be removed from Plaintiff's ankle. Dr. Craig's notes from August 5, 2010, state that, on follow up for right-ankle ORIF repair, x-rays showed a "well-healed right ankle fracture, ORIF repair, anatomical alignment with stable ankle mortise." That note recommended: "Continue home exercises. Follow-up with us as needed."

A KDOC medical note signed by Defendant Kuhbander dated August 27, 2010, states that Plaintiff came to clinic complaining of "right ankle pain when standing on line. Had surgery with pins placed and case is now off. No f/u scheduled – may bear wt according to ortho notes."

5

A KDOC note signed by Defendant Harrison dated October 13, 2010, stated that Plaintiff was "no longer in seg. He is classified as a yard IM. He is having difficulty walking any distance such as to chow or to medical. No open area to right ankle. May want to consider PT." Another note signed by Defendant Harrison, dated the next day, states: "Please provide IM with some type of ankle support/stabilizer. X-ray show fracture is still not . . . healed. Pins are in place. IM is having pain upon bearing weight and is compensating by walking on side of right foot. Will provide wheelchair temporarily. I have drawn labs . . . to rule out osteomyelitis." KDOC progress notes signed by Defendant Kuhbander dated October 26, 2010, noted that she had seen him for ear pain, hematuria, and ankle pain. She referred him to the physical therapist "for shoe as noted in prior note." The medical records show that on January 18, 2011, Plaintiff presented with right ankle pain and noted,

> Has had this pain since trauma and surgical repair. Was given ankle brace and shoes . . . which helped, however and he in SEG these were removed. . . . Right medial malleolus tender and there is 1+ edema. Flexion and extension is limited. Antalgic gait. Plan to request equipment from security. Tylenol 325 tab 2 po tid prm x 30 days for pain.

A note signed by Defendant Harrison dated February 3, 2011, stated that Plaintiff had been "cleared by ortho" and that "[t]here are no orders to have screws removed. X-ray normal. Continue Tylenol with elevation. Ice pack." On February 11, 2011, Defendant Harrison ordered x-rays on Plaintiff's right ankle. That x-ray report, signed by an outside physician, stated that no acute findings were noted, the hardware pins remained intact with alignment remaining satisfactory compared to October 12, 2010, and there was "slight healing noted in comparison with no evidence of any acute osseous findings superimposed."

Another note signed by Defendant Harrison dated February 28, 2011, regarding

assessment of Plaintiff's complaints of right ankle pain stated that "Plaintiff was adamant about getting the pins removed and states he will do what he has to get this done. Explained to IM that the xray of his ankle is normal." That medical note stated that Plaintiff was to continue with Tylenol, may use an ankle brace and shoes, planned a consult with PT for evaluation, and recommended Plaintiff elevate his right ankle for pain. A noted signed April 21, 2011, by Defendant Kuhbander stated that Plaintiff was complaining of right foot pain but that

> [p]er x-ray ankle is in good alignment. He has been released by ortho. He is well known to this provider as he removed his own cast and walked on it even though told not to do so as it was not a walking case. He has been to PT and given a brace, compression hose and shoes. Today he is not wearing brace or hose and has shoes untied!

Defendant Kuhbander asked PT to help Plaintiff.

Finally, a note signed April 25, 2011, by Defendant Harrison requested a PT consultation for Plaintiff's right ankle. Defendant Harrison noted that Plaintiff requested to have the pins removed. Plaintiff underwent a physical therapy evaluation on July 26, 2011.

In response to the summary-judgment motion, Plaintiff argues that the medical records cited by Defendants must be falsified. As proof, he points to what he perceives to be a conflict between the August 9, 2010, record which stated that Plaintiff was bearing full weight on his right leg and was authorized to engage in activity as tolerated, that the surgical incision was healed, and he had full range of motion in his ankle with the medical note two months later. He points to the October 10, 2010, medical note stating that his right ankle was swollen and tender, he had limited movement, and x-rays showed that the orthopedic pins were in good position and the fracture was *not* healed. Plaintiff asserts that as of August 5, 2010, he was to follow up with EOA on an as-needed basis, not released from EOA care. Therefore, he takes issue with the

7

April 21, 2011, note in which Defendant Kuhbander recorded that his orthopedist had released him from care.

In reply, Defendants argue that, at best, he has shown that he disagrees with his medical treatment. They also argue that there is no evidence that records were falsified and that in fact there is no inconsistency between a medical note that in August 2010, his surgical *incision* was healed and he had full range of motion and an October 2010 note that the *fracture* itself was not healed. They also assert that not all surgical hardware needs to be removed, a fact which Plaintiff should be aware of since the medical records reveal that at least two and a half years before his right ankle fracture his left ankle underwent an open reduction and internal fixation and nearly two years later the surgical screws were still present in that ankle.

Defendants have submitted ample evidence that they were not responsible for making a decision regarding the removal of his screws. A review of the record also reveals no support for his argument that the surgical pins were supposed to or were required to come out. Thus, his contention that the screws were required to come out represents his opinion as to what medical treatment he should have been given. Plaintiff has expressed at most a disagreement with the medical treatment he received, and such is not an Eighth Amendment claim. *See Westlake v. Lucas*, 537 F.2d at 860 n.5.

## III. CONCLUSION AND ORDER

For the foregoing reasons, Defendants are entitled to judgment as a matter of law.

Defendants' motion for summary judgment (DN 37) is **GRANTED**.

Date:

cc:	Plaintiff, *pro se*
	Counsel of record
4412.009